**CARELLA, BYRNE, CECCHI,**
**BRODY & AGNELLO, P.C.**
James E. Cecchi
Donald A. Ecklund
Kevin G. Cooper
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
jcecchi@carellabyrne.com
decklund@carellabyrne.com
kcooper@carellabyrne.com

*Liaison Counsel for Plaintiff Stuart Bacha*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| STUART BACHA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>LINCOLN EDUCATIONAL SERVICES CORPORATION, SCOTT SHAW, and BRIAN MEYERS,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Stuart Bacha ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Lincoln Educational Services Corporation ("Lincoln" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Lincoln; and (c) review of other publicly available information concerning Lincoln.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired Lincoln securities between May 11, 2026 and August 9, 2026 inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Lincoln provides various career-oriented postsecondary education services to high school graduates and working adults in the United States.

3. On August 10, 2026, before the market opened, Lincoln reported earnings for the second quarter of 2026. Among other things, the Company reported ***student starts increased by only 1%*** year over year despite enrollment growing 9%,

"as ***fewer enrolled students than expected attended the first day of class.***"[1] The Company further disclosed that "during the quarter, we observed changes in the student decision-making process that affected conversion from enrollment to start" and that Lincoln "ha[s] taken, and [will] continue to take, actions to address these trends . . . ."

4. On this news, Lincoln's stock price fell $10.22 or 24.93% to close at $30.77 on August 10, 2026, on unusually heavy trading volume.

5. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company's admissions process was not effectively converting students from enrollment to start; (2) that, as a result, the Company was experiencing a significant drop in student starts relative to enrollment; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added, and all footnotes are omitted.

6. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are in this District.

10. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11. Plaintiff Stuart Bacha, as set forth in the accompanying certification, incorporated by reference herein, purchased Lincoln securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12. Defendant Lincoln is incorporated under the laws of New Jersey with its principal executive offices located in Parsippany, NJ. Lincoln's common shares trade on the NASDAQ exchange under the symbol "LINC."

13. Defendant Scott Shaw ("Shaw") was the Company's Chief Executive Officer ("CEO") at all relevant times.

14. Defendant Brian Meyers ("Meyers") was the Company's Chief Financial Officer ("CFO") at all relevant times.

15. Defendants Shaw and Meyers (together, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to

material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16. Lincoln provides various career-oriented postsecondary education services to high school graduates and working adults in the United States.

### Materially False and Misleading Statements Issued During the Class Period

17. The Class Period begins on May 11, 2026. On that day, Lincoln issued a press release announcing financial results for its first quarter ended March 31, 2026. The press release touted the Company's financial results and claimed that the Company was "investing in people and processes to continuously drive superior outcomes, which is positively impacting our student retention rate." Specifically, the press release stated as follows, in relevant part:

> **First Quarter 2026 Financial and Operational Highlights**
>
> (Quarter ended March 31, 2026, compared to quarter ended March 31, 2025, unless otherwise noted)
>
> • Revenue increased 22.5% to $144.0 million from $117.5 million

• Net income more than doubled to $4.4 million, or $0.14 per share, compared to $1.9 million, or $0.06 per share

• Adjusted EBITDA1 increased 85% to $15.5 million from $8.4 million

• Net cash from operating activities improved $13 million to $4.6 million generated versus $8.4 million used last year

• Total liquidity as of March 31, 2026 of approximately $72 million

• Student starts grew by 19.5% to 5,500, an increase of approximately 900

• Student ending-population rose by 17.6% to 18,702, an increase of nearly 2,800

• 2026 financial guidance raised to reflect strong first quarter results and current trends

* * *

"We also are investing in people and processes to continuously drive superior outcomes, which is positively impacting our student retention rate. Additionally, we continue to develop our corporate partnerships, expand our high school initiatives, as well as execute strategies to attract and build our veteran student population. These efforts are designed to begin yielding meaningful contributions as we turn into 2027.

"In addition to our overall growth across all key metrics, the first quarter bottom-line outperformance is largely attributed to increased operating efficiencies throughout our organization. We also generated cash from our operating activities during the first quarter, which has typically been a negative cash flow period for the company. These results, combined with our outlook for the remainder of the year, enable us to raise our 2026 guidance. This strong start to the year and our increased credit facility are important first strides as we advance towards our recently announced 2030 objectives of $850 million in revenue and $150 million of EBITDA, while continuing to build on our leadership position in providing superior education for in-demand careers."

18. On May 11, 2026, the Company submitted its quarterly report for the period ended March 31, 2026 on a Form 10-Q filed with the SEC, affirming the previously reported financial results and further touting the Company's student starts, as follows in relevant part:

> Revenue. Revenue increased $26.5 million, or 22.5%, to $144.0 million for the three months ended March 31, 2026, from $117.5 million in the prior year comparable period. ***Revenue growth was primarily due to a 18.2% increase in average student population driven by 19.5% start growth, with the remainder attributable to tuition increases.***

19. The above statements identified in ¶¶ 17-18 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company's admissions process was not effectively converting students from enrollment to start; (2) that, as a result, the Company was experiencing a significant drop in student starts relative to enrollment; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

20. On August 10, 2026, before the market opened, Lincoln reported earnings for the second quarter of 2026. Among other things, the Company reported ***student starts increased only approximately 1%*** despite enrollment growing 9%,

"as ***fewer enrolled students than expected attended the first day of class.*** " The Company further disclosed that "during the quarter, we observed changes in the student decision-making process that affected conversion from enrollment to start" and that Lincoln "ha[s] taken, and [will] continue to take, actions to address these trends . . . ." Specifically, the Company issued a press release which stated as follows:

> **Second Quarter 2026 Financial and Operational Highlights (Quarter ended June 30, 2026, compared to quarter ended June 30, 2025, unless otherwise noted)**
>
> Revenue increased 22.4% to $142.6 million from $116.5 million
>
> Adjusted EBITDA increased 42.4% to $12.7 million from $8.9 million
>
> Net cash from operating activities improved to $22.1 million generated versus $0.3 million
>
> Total liquidity as of June 30, 2026 of approximately $143 million
>
> Ending student population rose by 10.4% to approximately 18,900, an increase of nearly 1,800
>
> Student starts increased 1%; Full-year student start growth guidance of 10-14% reiterated
>
> *  *  *
>
> "Employer demand for our graduates remains strong, and awareness of career opportunities in the skilled trades continues to grow. Following nearly 20% student start growth in the first quarter, we expected second-quarter growth to moderate to approximately half this rate and enrollment for the quarter did grow at approximately nine percent. However, our start growth for the quarter slowed to one percent, as fewer enrolled students than expected attended the first day of class.

> In addition, during the quarter, we observed changes in the student decision-making process that affected conversion from enrollment to start. We have taken, and continue to take, actions to address these trends and believe they are reaccelerating growth in new student starts as our August class is expected to be one of the largest in our history and we remain confident in our guidance for full-year student start growth of 10% to 14%.

21. On the same date, the Company held an accompanying earnings call (the "2Q26 Earnings Call"). During the call, Defendant Meyers explained that "[d]espite . . . high single-digit enrollment in line with our expectations heading into the quarter, a lower percentage have converted to starts" and that, as a result, Lincoln experienced "a higher cost per start." Specifically, Defendant Meyers stated as follows, in relevant part:

> Revenue increased 22.4% to $142.6 million during the quarter, marking more than 3 consecutive years of sustained double-digit quarterly revenue growth. The increase is primarily driven by a 14.5% growth in our average student population. As Scott noted, while we are reiterating our full year student start growth guidance, our start rate was lower than expected during the second quarter. ***Despite high double -- high single-digit enrollment in line with our expectations heading into the quarter, a lower percentage have converted to starts.***
>
> ***As a result, student starts increased 1% during the quarter and the lower start volume contributed to a higher cost per start.*** In response, we have implemented actions to improve conversion to enrollment to start. While student start growth was softer than expected during the quarter, the impact was largely offset by a stronger retention among existing students. Through June, student attrition has improved by approximately 150 basis points compared with the prior year.

22. Further, during the 2Q26 Earnings Call, Defendant Shaw explained that the Company was taking certain actions to address the "softness" in student starts,

including "doing a much better job with packaging our students, getting them the financial aid . . . We're also working with our admissions folks as well as some of our educators to stay in contact with students." Defendant Shaw also attributed the decline in student starts to the fact "the government did require students to start repaying their loans back in May. And what that has resulted in is now that we're more than, let's say, 9, 10 months later, those students, some of them have defaulted." Specifically, during the 2Q26 Earnings Call, Defendant Shaw stated as follows, in relevant part:

> Sure. Yes. So as we said there, we had about 9% increase in enrollment. And unfortunately, based off the start rates had held to where they've been historically, we would have had 9% growth in our starts. ***The softness comes from multiple sources.***
>
> ***One, Brian mentioned, we're doing a much better job with packaging our students, getting them the financial aid. The sooner students know what they -- how they're going to pay for their education, the more certain they are to start with us. So we're definitely working on that. We're also working with our admissions folks as well as some of our educators to stay in contact with students***, stitching events, making sure that they know that this is a good opportunity for them, that they can complete the education so that they end up starting with us.
>
> There are also other touch points we are enhancing and making more broadly available to students. But I also will tell you, there was an event that kind of kicked in and happened and impacted us. And it will exist going forward, but I'm anticipating that it will be less -- and what happened is, as you know, ***the government did require students to start repaying their loans back in May. And what that has resulted in is now that we're more than, let's say, 9, 10 months later, those students, some of them have defaulted.***

23. On this news, Lincoln's stock fell $10.22 or 24.93% to close at $30.77 on August 10, 2026, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

24. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Lincoln securities between May 11, 2026 and August 9, 2026, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

25. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Lincoln's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Lincoln shares were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by Lincoln or its transfer agent and may be notified of the

pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

26. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

27. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

28. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Lincoln; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

29. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is

impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

30. The market for Lincoln's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Lincoln's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Lincoln's securities relying upon the integrity of the market price of the Company's securities and market information relating to Lincoln, and have been damaged thereby.

31. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Lincoln's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Lincoln's business, operations, and prospects as alleged herein.

32. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Lincoln's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

**LOSS CAUSATION**

33. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

34. During the Class Period, Plaintiff and the Class purchased Lincoln's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to

the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

**SCIENTER ALLEGATIONS**

35. As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Lincoln, their control over, and/or receipt and/or modification of Lincoln's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Lincoln, participated in the fraudulent scheme alleged herein.

**APPLICABILITY OF PRESUMPTION OF RELIANCE**

**(FRAUD-ON-THE-MARKET DOCTRINE)**

36. The market for Lincoln's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Lincoln's securities traded at artificially inflated prices during the Class Period. On July 7, 2026, the Company's share price

closed at a Class Period high of $55.68 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Lincoln's securities and market information relating to Lincoln, and have been damaged thereby.

37. During the Class Period, the artificial inflation of Lincoln's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Lincoln's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Lincoln and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

38. At all relevant times, the market for Lincoln's securities was an efficient market for the following reasons, among others:

(a) Lincoln shares met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, Lincoln filed periodic public reports with the SEC and/or the NASDAQ;

(c) Lincoln regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d) Lincoln was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each report was publicly available and entered the public marketplace.

39. As a result of the foregoing, the market for Lincoln's securities promptly digested current information regarding Lincoln from all publicly available sources and reflected such information in Lincoln's share price. Under these circumstances, all purchasers of Lincoln's securities during the Class Period suffered similar injury through their purchase of Lincoln's securities at artificially inflated prices, and a presumption of reliance applies.

40. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

**NO SAFE HARBOR**

41. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking

statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Lincoln who knew that the statement was false when made.

## FIRST COUNT

**Violation of Section 10(b) of The Exchange Act and**

**Rule 10b-5 Promulgated Thereunder**

**Against All Defendants**

42. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

43. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Lincoln's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

44. Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Lincoln's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

45. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Lincoln's financial well-being and prospects, as specified herein.

46. Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Lincoln's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Lincoln and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth

more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

47. Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

48. Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts

were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Lincoln's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

49. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Lincoln's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trade, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members

of the Class acquired Lincoln's securities during the Class Period at artificially high prices and were damaged thereby.

50. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Lincoln was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Lincoln securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

51. By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

52. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND COUNT

**Violation of Section 20(a) of The Exchange Act**

**Against the Individual Defendants**

53. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

54. Individual Defendants acted as controlling persons of Lincoln within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading before and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55. In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

56. As set forth above, Lincoln and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, Individual Defendants

are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

**CARELLA, BYRNE, CECCHI,**
**BRODY & AGNELLO, P.C.**

Dated: September 11, 2026

By: *___/s/ James E. Cecchi_____*
James E. Cecchi
Donald A. Ecklund
Kevin G. Cooper
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
jcecchi@carellabyrne.com
decklund@carellabyrne.com
kcooper@carellabyrne.com

*Liaison Counsel for Plaintiff Stuart Bacha*

**GLANCY PRONGAY WOLKE & ROTTER LLP**
Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
clinehan@glancylaw.com

Rebecca Dawson
745 5th Avenue, 5th Floor
New York, NY 10151
Telephone: (213) 521-8007
Facsimile: (212) 884-0988
Email: rdawson@glancylaw.com

*Counsel for Plaintiff Stuart Bacha*